1
2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

3
4

**In re Teflon Products Liability Litigation,**       :
**MDL NO. 1733**       :
       :

**CASE NO.:  4:06-cv-00115-REL-CFB**

5
6
7
8

LISA HOWE, an individual, MELISSA
OCHIRO, an individual, DIANNE
WALTON, an individual, and MARIA
SPROWL, on Behalf of Themselves and
All Others Similarly Situated,

)
)
)
)
)
)

(Previous Case No. CV05-5488 DDP
MANx (USDC CD CA)

**SECOND AMENDED CLASS**
**ACTION COMPLAINT FOR:**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                  Plaintiffs,

        v.

E.I. DUPONT DE NEMOURS &
COMPANY,

                  Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**(1)  VIOLATION OF THE**
**CALIFORNIA UNFAIR**
**COMPETITION LAW [Cal. Bus. &**
**Prof. Code §§ 17200 et seq.];**

**(2)   VIOLATION OF THE**
**CALIFORNIA CONSUMERS**
**LEGAL REMEDIES ACT [Cal. Civ.**
**§§ 1750 et seq.];**

**(3)  VIOLATION OF THE**
**CALIFORNIA FALSE**
**ADVERTISING LAW [Cal. Bus. &**
**Prof. Code §§ 17500 et seq.];**

**(4)   NEGLIGENCE;**

**(5)   FRAUDULENT INDUCEMENT,**
**DECEIT, AND FRAUDULENT**
**CONCEALMENT;**

**(6)   NEGLIGENT**
**MISREPRESENTATION: AND**

**(7)   RESTITUTION (UNJUST**
**ENRICHMENT)**

**[DEMAND FOR JURY TRIAL]**

Ervin, Cohen
& Jessup LLP

**SECOND AMENDED CLASS ACTION COMPLAINT FOR**

**INJUNCTIVE AND MONETARY RELIEF AND RETENTION OF**

**JURISDICTION**

**(Jury Trial Demanded)**

Class Representative Plaintiffs, LISA HOWE, MELISSA OCHIRO, DIANNE WALTON and MARIA SPROWL (collectively "Class Representative Plaintiffs") on their own behalf and on behalf of all others similar situated, by and through their undersigned counsel, hereby file this Second Amended Class Action Complaint for Injunctive And Monetary Relief against Defendant, E.I. DUPONT DE NEMOURS & COMPANY ("DuPont"), and allege:

## I.      INTRODUCTION

1.      This is a class action seeking monetary and other relief arising from, among other things, DuPont's deceptive and unfair trade practices and making of fraudulent, false, misleading, deceptive and unconscionable representations and materials omissions to the consuming public about the safety of a product commonly known as "Teflon." Cooking products containing Teflon can release harmful and dangerous substances, including a chemical that has been determined to be "likely" to cause cancer in humans, during the intended personal, family, household and commercial use for which those products were acquired or retained.

2.      DuPont manufactured and distributed Teflon when it knew or should have known that Teflon contains substances that were dangerous and harmful to the public that can be released when cooking products made with Teflon are used for their intended purposes.

3.      This action is brought to require DuPont (i) to pay damages to the Class Representative Plaintiffs and other Class Members who are purchasers and/or users of cooking products made with or containing DuPont's Teflon product; (ii) to create a fund for independent scientific researchers to further investigate the potential for adverse health effects to consumers who have used cooking products containing

1  Teflon; and (iii) to require that DuPont provide a warning label on cooking products

2  regarding the potential adverse and harmful effects of Teflon.

3  ## II.   JURISDICTION AND VENUE

4  4.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

5  (a)(1) and (d)(2) in that this action seeks monetary relief in excess of $5,000,000.00,

6  exclusive of interest, costs and attorney's fees and is between citizens of different

7  States.

8  5.   Venue is appropriate in this judicial circuit pursuant to 28 U.S.C. §

9  1391 and California Civil Code § 1780(c) because a substantial part of the events or

10  omissions giving rise to the claims occurred in the Central District of California.

11  ## III.   REPRESENTATIVE CLASS PLAINTIFFS

12  6.   Plaintiff, DIANNE WALTON, is a resident of Ventura County,

13  California and at all times material hereto, purchased and/or continued to use for

14  herself and her family cooking products containing or made with DuPont's Teflon

15  product.  Plaintiff brings this action on behalf of herself, the Class (defined below),

16  and on behalf of the general public.

17  7.   Plaintiff, MELISSA OCHIRO, is a resident of Los Angeles County,

18  California and at all times material hereto, purchased and/or continued to use for

19  herself and her family cooking products containing or made with DuPont's Teflon

20  product.  Plaintiff brings this action on behalf of herself, the Class (defined below),

21  and on behalf of the general public.

22  8.   Plaintiff, LISA HOWE, is a resident of Los Angeles County, California

23  and at all times material hereto, purchased and/or continued to use for herself and

24  her family cooking products containing or made with DuPont's Teflon product.

25  Plaintiff brings this action on behalf of herself, the Class (defined below), and on

26  behalf of the general public.

27  9.   Plaintiff, MARIA SPROWL, is a resident of Ventura County,

28  California and at all times material hereto, purchased and/or continued to use for

Ervin, Cohen
& Jessup LLP

1  herself and her family cooking products containing or made with DuPont's Teflon

2  product.  Plaintiff brings this action on behalf of herself, the Class (defined below),

3  and on behalf of the general public.

4  <center>**IV.   DEFENDANT**</center>

5      10.   DuPont is a Delaware corporation.  DuPont sells or distributes Teflon

6  throughout the State of California.

7      11.   DuPont is in the business of manufacturing and supplying Teflon for

8  distribution, marketing, wholesaling and retailing in various products made for

9  consumer use.  Included among these products are housewares, household

10  appliances, and cooking products such as pots and pans.

11      12.   This Court has jurisdiction over DuPont pursuant to the California

12  Constitution, Article XI, Section 10 and California Code of Civil Procedure §

13  410.10 because DuPont is transacting business and committing the acts complained

14  of herein in the State of California.

15  <center>**V.   BACKGROUND AND GENERAL ALLEGATIONS**</center>

16      13.   DuPont was founded in 1802.

17      14.   DuPont operates in more than seventy (70) countries.

18      15.   Teflon was invented in 1938 at DuPont's Jackson Laboratory.

19      16.   Teflon   is   DuPont's   trademarked   name   for   the   chemical

20  polytetrafluoroethylene (PTFE).

21      17.   DuPont has registered the Teflon trademark in 19 countries and first

22  began selling Teflon commercially in 1946.

23      18.   As DuPont proudly boasts in its Teflon website:

24          Teflon is really everywhere. Not only can you find it in

25          your clothes and on your cookware, but you can also find

26          it on products on almost every continent.

27      19.   Teflon is commonly found in "non-stick" cooking products, such as in

28  pots and pans, star fryers and woks, pizza pans, breadmakers, cookie sheets, griddle

Ervin, Cohen
& Jessup LLP

1  pans and skillets, wafflers, deep fryers, crock pots, roasting pans, cake pans and
2  molds, and other common cooking utensils and aids.

3       20.    Teflon and the chemicals used in its production represent a $2 billion
4  per year industry.

5       21.    DuPont nets an estimated $200 million per year from its sale of Teflon.

6       22.    DuPont has advertised and represented to the public that Teflon makes
7  life easy, and reportedly has called Teflon a "housewife's best friend."

8       23.    DuPont claims on its Teflon website that "the Teflon brand is one of
9  the world's most recognized and respected of all ingredient brands" and that Teflon
10  enhances consumer recognition.

11       24.    During the last fifty (50) years, DuPont's scientists have studied
12  whether products containing Teflon are safe for use by consumers. DuPont has
13  continually represented to consumers in public statements and documents, in press
14  releases and on its websites that Teflon is safe for consumer use and has denied that
15  the use of cooking products containing Teflon can be harmful to human health.

16       25.    Perflourooctanoic acid ("PFOA") is a perflourinated detergent/
17  surfactant that is manufactured, processed, and/or distributed by DuPont in
18  connection with its manufacture of Teflon. PFOA is also sometimes referred to by
19  DuPont as C-8.

20       26.    PFOA is the chemical used to give Teflon its "non-stickiness."

21       27.    PFOA is a liver toxin in animals, is biopersistent in humans and
22  animals and bioaccumulative in humans.

23       28.    PFOA is associated with other health concerns in animals, including
24  cancer and developmental defects.

25       29.    PFOA is not naturally occurring but is nonetheless found to
26  contaminate the blood of humans in all geographic regions of the United States.

27

28

Ervin, Cohen
& Jessup LLP

30.     For example, a study released in 2001 by 3M Corporation found that PFOA was present in the blood of ninety six percent (96%) of the 598 children tested. The children were located in 23 states.

31.     Studies have indicated that PFOA causes developmental toxicity and other adverse effects in animals.

32.     DuPont has conducted both animal and human studies and tests on PFOA.

33.     DuPont has continually represented to consumers in public statements and documents, in press releases and on its websites that there is no danger posed by PFOA when using cooking products coated with Teflon and has denied that the use of cooking products coated with Teflon can be harmful to human health.

34.     In 1981, however, 3M, a manufacturer of PFOA, advised DuPont that PFOA may cause birth defects in laboratory animals.

35.     Also in 1981, DuPont possessed a document describing the results of a blood sampling study DuPont conducted on eight (8) of its pregnant employees employed at the plant where PFOA is manufactured. This document identified the levels of PFOA in the blood of DuPont's pregnant employees and described the status of the child.

36.     A purpose of DuPont's blood sample study was to monitor these pregnant employees for PFOA exposure, and to monitor umbilical cord blood for the presence of PFOA and to test the babies' blood for the presence of PFOA.

37.     The 1981 document demonstrates the presence of PFOA in the umbilical cord blood of at least one of the eight (8) DuPont employees and in the blood of another worker's baby. Thus, DuPont knew or should have known from this study that PFOA moved from the mother, through the placenta, to the fetus.

38.     In 1982, DuPont reported data to the EPA regarding the transplacental movement of PFOA in rats. The EPA considered this information to be "substantial risk data." DuPont failed to disclose to the EPA (or to consumers), however, that it

Ervin, Cohen
& Jessup LLP

1  had obtained human blood sampling data in 1981 that confirmed the transplacental

2  movement of PFOA in humans and further failed to disclose to the EPA the

3  information it had about the presence of birth defects (described below) in the

4  babies of its female workers exposed to PFOA.

5      39.    The EPA contends that DuPont's human blood sampling information

6  demonstrating the transplacental movement of PFOA "reasonably supports the

7  conclusion that PFOA presents a substantial risk of injury to human health."

8      40.    More specifically, the EPA contends that DuPont's human blood

9  sample data demonstrating that PFOA crosses the human placental barrier between

10  PFOA exposed mothers and their fetuses suggests that the fetuses could experience

11  toxic effects from PFOA, including bioaccumulation and, as observed in animal

12  tests, developmental toxicity and liver toxicity.

13      41.    The EPA considers DuPont's human blood sampling information that

14  confirms transplacental migration of PFOA "to reasonably support the conclusion of

15  a substantial risk of injury to health or to the environment."

16      42.    Moreover, the EPA considers DuPont's blood sample data confirming

17  the transplacental movement of PFOA to be "known toxicological information"

18  about PFOA.

19      43.    Additionally, documents maintained by DuPont chronicling the health

20  of babies born to DuPont workers exposed to PFOA indicate birth defects in two (2)

21  of seven (7) babies. One child had eye and tear duct defects and the second had

22  nostril and eye defects.

23      44.    Among other things, as a result of DuPont's failure to disclose its 1981

24  blood sample data to the EPA, the EPA launched an investigation into DuPont's

25  concealment of its study information and determined that DuPont engaged in

26  unlawful behavior by concealing the blood sample study results.

27      45.    DuPont's concealment of its 1981 blood sample study information may

28  well have altered the continued commercialization of Teflon and the profits received

Ervin, Cohen
& Jessup LLP

1  by DuPont from its sale of Teflon. As the EPA pointedly states in its complaint

2  against DuPont contending that DuPont violated the Federal Toxic Substances

3  Control Act from June 1981 to March 2001 by not reporting health risks from

4  exposure to PFOA:

5        [the EPA's efforts to investigate the risks posed by PFOA]

6        might have been more expeditious had the data on

7        transplacental movement of the chemical in humans been

8        submitted immediately by DuPont when DuPont obtained

9        the information in 1981.

10      46.  DuPont has settled the claims brought by the EPA claiming it violated

11  the Federal Toxic Substances Control Act.

12      47.  In May, 2005, however, a federal grand jury from the Justice

13  Department's Economic Crimes Section issued a subpoena to DuPont regarding

14  DuPont's use of PFOA.

15      48.  There are numerous additional facts and studies that demonstrate that

16  exposure to PFOA causes adverse health effects. PFOA has been linked to cancer,

17  organ damage, and other negative health effects in tests on laboratory animals. For

18  example, male and female rats and mice have developed several different kinds of

19  tumors when exposed to PFOA.

20      49.  Various studies have confirmed that exposure to PFOA causes or may

21  cause vascular disease. For example, it is reported that workers exposed to PFOA at

22  3M's plant in Cottage Grove, Minnesota, demonstrated a statistically significant,

23  elevated risk of dying from cerebrovascular disease. Findings of vascular disease

24  have also been reported in a study of DuPont workers exposed to PFOA.

25  Additionally, DuPont's study of the blood of its workers demonstrates a statistically

26  significant correlation between cholesterol and PFOA. Similarly, there was also a

27  statistically significant correlation between cholesterol and PFOA found in a study

28

Ervin, Cohen
& Jessup LLP

1   of Italian workers exposed to PFOA. Moreover, there are animal studies showing
2   changes in blood chemistry associated with PFOA exposure that bolster these
3   human study results.

4       50.     Studies have also shown that exposure to PFOA correlates to
5   incidences of prostate cancer. For example, workers at 3M's Cottage Grove plant
6   exhibited a statistically significant association between the length of workplace
7   PFOA exposure and prostate cancer mortality. Moreover, an elevated risk of dying
8   from prostate cancer was found among certain workers exposed to PFOA.
9   Additionally, workers at 3M's Decatur, Alabama, plant exhibited an increase in
10  demand for medical care for male reproductive cancers (including prostate)
11  compared to the general population, with the greatest increases among those
12  workers in the long-time, high-PFOA-exposure category.

13      51.     There are numerous other studies demonstrating many potential health
14  risks related 10 exposure to PFOA. Some of these studies include:

15          (a)     Two analyses of leukemia incidence were conducted from 1956-
16  1989 showing statistically increased odds ratios for workers in DuPont's
17  Washington Works plan from 1956-1989. Additionally, a general mortality study
18  found an increase in leukemia.

19          (b)     Workers exposed to perfluorochemicals at 3M's Decatur,
20  Alabama plant exhibited significantly increased numbers of episodes of care for
21  intestinal tumors versus those not exposed occupationally. An elevated increase of
22  risk of dying from cancer of the large intestine was also seen in those exposed to
23  PFOA in 3M's Cottage Grove, Minnesota plant compared to the general population.

24          (c)     At 3M's Cottage Grove, Minnesota plant an elevated risk of
25  dying from pancreatic cancer or pancreatic disease was seen among workers
26  exposed to PFOA versus those not exposed occupationally.

27

28

Ervin, Cohen
& Jessup LLP

(d)    At 3M's Cottage Grove, Minnesota, plant an elevated risk of dying from cancer of the testis or other male reproductive cancers was seen among workers exposed to PFOA versus those not exposed occupationally.

(e)    A 3M-sponsored animal study found a statistically significant increase in fibroademonas (mammary tumors) correlated with PFOA dose.

(f)    There are also studies that demonstrate PFOA may be related to adverse pituitary effects and immunological function.

52.    Over 40 years ago, DuPont conducted human experiments with Teflon-laced cigarettes to determine why certain workers were becoming sick on the job with a Teflon-related illness commonly called Polymer Fume Fever. DuPont laced the cigarettes of its volunteers with Teflon and had the volunteers inhale the cigarette fumes until they became sick. In these dosing experiments up to 90% of the people in the highest dose group became ill for an average of 9 hours, demonstrating flu-like symptoms, including chills, back ache, fever and coughing. These symptoms are commonly linked to Polymer Fume Fever. DuPont acknowledges that Teflon fumes can sicken people, causing Polymer Fume Fever.

53.    Moreover, apparently aware of the adverse effects in humans of inhaling heated Teflon, DuPont required its employees to wear respirators when working with Teflon heated to 400°F (or more) while in poorly ventilated areas. Experiments demonstrate that when cooking in the home, the surface of a Teflon-coated pan can reach this temperature within 2 minutes using a conventional stove top burner set on high.

54.    Reports indicate that a Teflon-coated pan reached 721°F in just five minutes under the same test. DuPont studies show that Teflon emits toxic particulates at 446°F. At 680°F Teflon-coated pans release at least six toxic gases, including two carcinogens, two global pollutants, and MFA, a chemical lethal to humans at low doses. At temperatures that DuPont scientists claim are reached on

stovetop drip pans (1000°F), non-stick coatings break down to a chemical warfare agent known as PFIB, and a chemical analog of the WWII nerve gas phosgene.

55.    For the past fifty years DuPont has claimed that their Teflon coatings do not emit hazardous chemicals through normal use. In a recent press release, DuPont wrote that "significant decomposition of the coating will occur only when temperatures exceed about 660 degrees F (340 degrees C). These temperatures alone are well above the normal cooking range." Reported tests show, however, that Teflon-coated cookware exceeds these temperatures through the common act of preheating a pan on a burner set on high. The toxic particles and gases emitted when Teflon heats and the temperatures at which these particles and gases are first emitted, follow:

> 464°F – Ultrafine particulate matter: Teflon produces very small (ultrafine) particles which cause extreme lung damage to rats within 10 minutes of exposure. Longer exposure causes death.

> 680°F – Tetrafluoroethylene (TFE): The National Toxicology Program considers tetrafluoroethylene (TFE) to be a "reasonably anticipated" human carcinogen because it is known to cause cancer in laboratory animals.

> 680°F – Hexafluoropropene (HFP): Exposure to fluorocarbons like HFP can lead to eye, nose and throat irritation; heart palpitations, irregular heart rate, headaches, light-headedness, fluid accumulation in the lung and possibly death. Long-term exposure is associated with decreased motor speed, memory and learning. In mice and rats, inhalation of hexafluoropropene (HFP) causes kidney lesions, decreased numbers of a type of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

immune cell and increased urination. IFP also causes increased numbers of chromosomal abnormalities in hamster ovaries.

680°F – Difluoroacetic acid (DFA): Kidney toxicity from DFA has been reported in rats.

680°F – Monofluoroacetic acid (MFA, fluoroacetic acid or compound 1080): Monofluoroacetic acid is toxic. Doses as low as 0.7 to 2.1 mg/kg can kill people. Initially, people report nausea, vomiting, numbness, tingling, anxiety, muscle twitching, low blood pressure and blurred vision. If exposure is high enough, people can have irregular heart rate, heart attacks and severe convulsions leading to respiratory failure.

680°F – Perfluorooctanoic acid (PFOA): The effects of PFOA are discussed throughout this Complaint.

878°F – Silicon tetrafluoride (SiF4): Silicon tetrafluoride is a highly toxic, corrosive gas. In the lungs, moisture causes the silicon particles to separate, releasing toxic hydrofluoric acid and also coating the lung with silicon particles. Inhaling hydrofluoric acid can cause eye and throat irritation, cough, difficult breathing, bluish skin color caused by lack of oxygen, lung damage and fluid accumulation in the lung. Long term exposure can cause weight loss, decreased numbers of red and white blood cells (anemia and leucopenia), discoloration of the teeth and abnormal thickening of the bone.

887°F – Perfluoroisobutene (PFIB): Perfluoroisobutene (PFIB) is toxic. Inhalation can lead to fluid build up in the lung, a condition that can lead to death. PFIB is listed in the Chemical Weapons Convention as a Schedule 2 compound. PFIB is many times more toxic than phosgene, a highly toxic corrosive gas also listed as a chemical weapon.

932°F – Carbonyl fluoride (COF2): Breakdown of Teflon in the air is the major source of carbonyl fluoride exposure. Carbonyl fluoride is the fluorine version of phosgene, a chlorinated chemical warfare agent. Carbonyl fluoride fumes can irritate eyes, ears and nose. More serious symptoms of exposure include chest pains, breathing difficulty, fluid accumulation in the lungs, weakness, liver damage and increased glucose levels.

932°F – Hydrogen fluoride (HF): Hydrogen fluoride (HF) is a toxic corrosive gas, and can cause death to tissue it comes into contact with, including tissue in the lungs. Breathing HF can cause severe lung damage, such as fluid buildup in the lungs and inflammation of lung passages.

1112°F – Trifluoroacetic acid fluoride (CF3COF): Trifluoroacetic acid fluoride is toxic when it breaks down into hydrogen fluoride and trifluoroacetic acid.

1112°F – Octafluorocyclobutane (OFCB): Inhaling high levels of octafluorocyclobutane can cause heart beat irregularities, unconsciousness and death. People with pre-existing heart conditions may be extra vulnerable.

Ervin, Cohen
& Jessup LLP

56.   The EPA has recently identified significant human health concerns from exposure to PFOA.

57.   On June 27, 2005, a panel of the EPA's Science Advisory Board ("SAB") released a draft of its conclusions after reviewing the EPA's report entitled "Draft Risk Assessment of the Potential Human Health Effects Associated with Exposure to Perfluorooctanoic Acid (PFOA)."

58.   A majority of members of the EPA's SAB concluded that PFOA was likely to cause cancer in humans. The SAB stated:

> that the experimental weight of the evidence with respect to the carcinogenicity of PFOA was stronger than [previously determined by the EPA], and suggested that **PFOA is a 'likely' carcinogen in humans**. According to the EPA's Guidelines for Carcinogen Risk Assessment (also known as EPA's Cancer Guidelines), this descriptor is typically applied to agents that have tested positive in more than one species, sex, strain, site or exposure route, with or without evidence of carcinogenity in humans.

59.   A recent Centers for Disease Control study showed that PFOA has contaminated the bloodstream of fetuses throughout the United States.

60.   DuPont executives nonetheless continue to claim that the use of Teflon in cooking products is completely safe.

## VI.   CLASS ACTION ALLEGATIONS

61.   The Representatives seek declaratory, injunctive, monetary and equitable relief as well as other civil penalties permitted by law on behalf of the Classes, to adjudicate: defendant's liability for its deceptive, unlawful, unfair, unconscionable and fraudulent misrepresentations and material omissions; the classes' entitlement to elect rescission, restitution, and/or disgorgement remedies; to establish a court-operated medical monitoring program; the provision of class notice once the parties' rights and liabilities are adjudicated by the Court; and other related forms of equitable relief.

Ervin, Cohen
& Jessup LLP

62.    Consequently, a class action is appropriate pursuant to Fed. R. Civ. P. 23 (a), 23(b)(1)(A) and (B), and Rule 23(b)(2).

63.    However, after that notice process, to the extent more than 100 class members affirmatively elect instead to seek actual damages not incidental to equitable relief, plaintiffs ask the Court retain jurisdiction to determine at that time whether additional certification pursuant to Rule 23(b)(3) would be necessary or appropriate as to the group of those so electing.

64.    The first class represented (Class I) is composed of all persons who: purchased or obtained ownership within the State of California one or more cooking product(s) made with or containing Teflon, and their family or household members; first discovered DuPont's misrepresentations and material omissions on or after June 26, 2002; and still owned the cooking product(s) on June 27, 2005.

65.    The second class represented (Class II) is composed of all persons who: within the State of California came into ownership for personal, family, or household use, whether by sale, lease, assignment, award by chance or other transfer, of a cooking product(s) made with or containing Teflon, and their family and household members; first discovered DuPont's representations were deceptive, unfair, unlawful, fraudulent and/or unconscionable on or after June 26 2001; and still maintained possession of the cooking products on June 27, 2005.

66.    DuPont has knowledge of all licensees authorized to manufacture or sell cookware made with or containing Teflon and the brand and model names so marketed.  Upon information and belief, and subject to information obtainable only through pretrial discovery, DuPont licensed the use of Teflon to, among others, the following manufacturers and models of cookware:

| MFG. | MODELS |
|---|---|
| All Clad | Emerilware<br>LTD<br>Cop-R-Chef |

| | Copper-Core<br>MC2 |
|---|---|
| Anolon | Anolon Titanium<br>Advanced<br>Classic<br>Professional<br>Suregrip Bakeware |
| Basic Essentials | |
| Bodum | |
| Chef's Planet | Arc-42 Cookware<br>Tefmat Oven & Bake Liners |
| Circulon | Circulon Total<br>Elite<br>Premier<br>DuPont Autograph<br>Circulon Electrics |
| Crestware | Dupont "Supra Select"<br>Platinum Pro<br>Silverstone Xtra<br>Silverstone Professional |
| Cuisinart | Chef's Classic |
| DuPont | Autograph<br>Plantinum Pro<br>Platinum Select<br>Xtra<br>Classic |
| | |
| Farberware | Farberware, Inc.<br>Farberware Millennium<br>Farberware Nonstick |

Ervin, Cohen<br>& Jessup LLP

| | Aluminum Restaurant Pro Enhanced Nonstick Cookware Select Vibrance Cooks Kitchen Classic Series Nonstick Skillets Farberware Nonstick Bakeware |
|---|---|
| GAU | |
| GSI Outdoors | Bugaboo |
| Kitchenaid | Gourmet Excellence Gourmet Essentials |
| Megaware Inc. of California | Castalon Castame Triomphe Concorde Magnifica |
| Newell Rubbermaid | Calphalon |
| Royal Cougar | |
| Salton | |
| Silverstone | Culinary Colors Series Nonstick Stainless Steel Series |
| T-Fal | Jamie Oliver Cookware |
| US Foodservice | Next Day Gourmet |
| Wearever | Mirro Regal |

| Wearever |
|---|

67.     Excluded from the Class are the presiding District Court Judge and Magistrate Judge in this matter, as well as all Judges sitting on the Ninth Circuit Court of Appeals.

**Numerosity**

68.     The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.

69.     While the exact number of Class members is unknown to the Class Representative Plaintiffs at this time and can only be ascertained through appropriate discovery, the Class Representative Plaintiffs estimate the Class Members to be in excess of 15,000,000 consumers.   Class Members may be identified from records maintained by DuPont or its agents or may be notified of the pendency of this action by mail and/or publication using a form of notice similar to that customarily used in consumer class actions.

**Common Questions of Law and Fact and Predominance**

70.     There is a well-defined commonality of interest regarding the questions of law and fact affecting the Class.  Questions of law and fact common to the Class, among others, are:

(a)     Whether DuPont made, approved, allowed, or ratified representations in California through mass marketing and product-specific advertising that Teflon or the use of Teflon-coated cooking products was safe, healthful, or that use of Teflon-coated cooking products was more healthful than use of non-Teflon-coated cooking products.

(b)     Whether DuPont's mass marketing and product-specific advertising in California that Teflon or the use of Teflon-coated cooking products was safe, healthful, or that use of Teflon-coated cooking products was more

1   healthful than use of non-Teflon-coated cooking products, would cause a reasonable

2   person to believe the ordinary use of Teflon-coated cooking products entailed no

3   potential human health risk.

4        (c)    Whether at the time of such mass marketing and product-specific

5   advertising in California, DuPont possessed or relied upon a reasonable basis in fact

6   (such as factual, objective, quantifiable, clinical or scientific data or other competent

7   and reliable evidence) substantiating representations that Teflon or the use of

8   Teflon-coated cooking products was safe, healthful, and entailed no potential human

9   health risks.

10        (d)    Whether at the time of such mass marketing and product-specific

11   advertising in California, DuPont knew or should have known that the release of

12   substances during the ordinary and foreseeable use of Teflon-coated cooking

13   products could not medically or scientifically be said, to a reasonable degree of

14   professional certainty, to entail no potential human health risks.

15        (e)    Whether at the time of such mass marketing and product-specific

16   advertising in California, DuPont had in its possession animal or human test data

17   indicating potential adverse health effects from exposure to one or more of the

18   chemicals that can be released during ordinary and foreseeable use of Teflon-coated

19   cooking products.

20        (f)    Whether at the time of such mass marketing and product-specific

21   advertising in California, DuPont had knowledge or possession of blood sample test

22   results of its workers indicating transplacental movement of one or more of the

23   chemicals that can be released during ordinary and foreseeable use of Teflon-coated

24   cooking products.

25        (g)    Whether at the time of such mass marketing and product-specific

26   advertising in California, DuPont had in its possession data regarding deformities

27   suffered by the children of female DuPont employees exposed to one or more of the

28

Ervin, Cohen
& Jessup LLP

1  chemicals that can be released during ordinary and foreseeable use of Teflon-coated

2  cooking products.

3          (h)     Whether at the time of such mass marketing and product-specific

4  advertising in California, DuPont had in its possession information demonstrating or

5  tending to demonstrate that one or more of the chemicals that can be released during

6  ordinary and foreseeable use of Teflon-coated cooking products does present

7  potential risk of injury to human health.

8          (i)     Whether during the time of such mass marketing and product-

9  specific advertising in California, DuPont had been notified by the EPA that

10  evidence of transplacental movement of one or more of the chemicals that can be

11  released during ordinary and foreseeable use of Teflon-coated cooking products in

12  laboratory rats was "substantial risk data" of a potential human health risk.

13          (j)     Whether at the time of such mass marketing and product-specific

14  advertising in California, DuPont knew or should have known that fumes from

15  heated Teflon-coated cooking products can sicken people.

16          (k)     Whether the representations in DuPont's mass marketing and

17  product specific advertising in California, that Teflon or the use of Teflon-coated

18  cooking products was safe, fit, effective for their intended purpose, healthful, or

19  more healthful than use of non-Teflon-coated cooking products, were qualified or

20  unqualified.

21          (l)     Whether at the time of such mass marketing and product-specific

22  advertising in California, DuPont disclosed, in a fashion sufficiently specific so as to

23  leave no reasonable probability of misunderstanding, clearly, conspicuously and in

24  close proximity to its affirmative representations, any and all material exclusions,

25  reservations, limitations, modifications, or conditions relevant to the affirmative

26  representations that Teflon or the use of Teflon-coated cooking products was safe,

27  healthful, or more healthful than use of non-Teflon-coated cooking products.

28

Ervin, Cohen
& Jessup LLP

1          (m)   Whether   DuPont's   mass   marketing   and   product-specific

2   advertising in California affirmatively represented that Teflon or the use of Teflon-

3   coated cooking products was safe, fit, effective for their intended purpose, healthful,

4   or more healthful than use of non-Teflon-coated cooking products, when DuPont

5   knew or should have known those representations would justifiably induce class

6   members to choose, retain, and/or continue use of Teflon-coated cookware, or to

7   refrain from choosing and using other cookware, due to DuPont's failure to disclose

8   - knowingly, with scienter, and/or through a failure to exercise reasonable care -

9   what it actually knew, and actually did not know, about the truth or falsity of those

10   representations, thus, rendering those representations untrue, unlawful, deceptive, or

11   misleading, to the injury of class members.

12          (n)   Whether   the   class   representative   plaintiffs'   claims   are

13   sufficiently similar to the claims of prospective class members.

14          (o)   Whether the class representative plaintiffs no longer want to use

15   or own their Teflon-coated cooking products.

16          (p)   Whether   DuPont's   conduct   violated   the   California   Unfair

17   Competition Law, California Business and Professions Code §§ 17200 et seq.;

18          (q)   Whether   DuPont's   conduct   violated   the   California   False

19   Advertising Law, California Business and Professions Code §§ 17500 et seq.;

20   Whether DuPont's conduct violated the California Consumers Legal Remedies Act,

21   California Civil Code §§ 1750 et seq.;

22          (r)   Whether DuPont's conduct warrants the imposition of punitive

23   damages to deter further such conduct;

24          (s)   Whether the class representative plaintiffs and the other class

25   members have suffered damages;

26          (t)   Whether DuPont is liable to the class representative plaintiffs

27   and the other class members for damages;

28

Ervin, Cohen
& Jessup LLP

(u)     The types of equitable and injunctive relief to which the class representative plaintiffs and the other class members may be entitled for deceptive, misleading, unlawful and fraudulent misrepresentations; and

(v)     Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this First Amended Complaint.

71.     These common questions of law and fact are governed by the laws of the State of California, where DuPont has engaged in its wrongful conduct, and predominate over questions that affect only individual Class Members.

**Typicality**

72.     The claims of the Class Representative Plaintiffs are typical of those of the Class. The Class Representative Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. The Class Representative Plaintiffs anticipate no difficulty in the management of this litigation as a Class Action. Accordingly, the Class Representative Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

**Superiority**

73.     A class action is the best available method for the fair and efficient adjudication of this controversy.  The Class Members are so numerous that the joinder of all Members is impracticable, if not impossible. Because the harm suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation makes it impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should each individual Class Member be required to bring separate actions, the resulting multiplicity of lawsuits would cause undue hardship and expense on the Court and on the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interest of other Class

Ervin, Cohen
& Jessup LLP

1  Members who are not parties to the adjudications and/or may substantially impede
2  their ability to protect their interests.

3  **Adequacy of Representation**

4  74.   The Class Representative Plaintiffs can and will fairly and adequately
5  represent and protect the interests of all the Class Members because the Class
6  Representative Plaintiffs' claims are typical of their claims, and the Class
7  Representative Plaintiffs have no interests that conflict with or are antagonistic to
8  their interests.   The Class Representative Plaintiffs intend to vigorously prosecute
9  this action and has retained attorneys competent and experienced in class actions
10  who will vigorously prosecute this litigation.

11  75.   To the extent such conditions exist, all conditions precedent to the
12  maintenance of this action have been performed, have occurred, or have otherwise
13  been waived.

14  **FIRST CAUSE OF ACTION**

15  **(Violation of the California Unfair Competition Law,**

16  **California Business & Professions Code §§ 17200, et seq.)**

17  76.   The Class Representative Plaintiffs reallege and reincorporate the
18  allegations contained in paragraphs 1 through 75 above and paragraphs 86 through
19  94 and 97-103 below as if fully set forth herein.

20  77.   The California Unfair Competition Law defines unfair business
21  competition to include any "unlawful, unfair or fraudulent" act or practice, as well
22  as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code
23  § 17200.  This claim is brought on behalf of Class II.

24  78.   The actions and conduct of DuPont as described herein constitute
25  unfair, unlawful and fraudulent trade practices within the meaning of California
26  Business and Professions Code §§ 17200, et seq.   The Class Representative
27  Plaintiffs and the Class II Members are individuals who have purchased, obtained,
28  or been exposed to the use of Teflon-coated cookware products for or in connection

1  with personal, family and household purposes within the State of California and,

2  thus, are members of the public who are intended to be protected by this statute.

3      79.    The practices of DuPont are unlawful, fraudulent, unfair and have

4  deceived, and are likely to deceive, members of the general public in that, among

5  other things:

6          (a)    DuPont knew or should have known that Teflon emissions from

7  heating were or are potentially harmful to consumers, cannot be said to pose no risk

8  to human health given the medical and scientific evidence within DuPont's

9  knowledge, and are not without risks to human health for all uses or conditions

10 associated with personal, family, and household use;

11         (b)    DuPont knowingly made misleading representations to Class II

12 Member that products made with or containing Teflon were safe and without risks

13 for use by consumers and their families;

14         (c)    DuPont knowingly advertised that products made with or

15 containing Teflon were safe and without risks to consumers and their families

16 without stating all material conditions, limitations, exclusions, and qualifications

17 applicable thereto clearly, conspicuously, and in close proximity to those

18 representations;

19         (d)    DuPont knowingly made false representations to Class II

20 Members that products made with or containing Teflon were safe and not potentially

21 harmful to the Class despite what it knew of and concealed about the adverse effects

22 of chemicals contained in Teflon demonstrated in animal studies, the blood sample

23 data it compiled regarding transplacental movement of chemicals contained in

24 Teflon, and the information it knew of regarding the occurrence of birth defects in

25 the children of its female workers;

26         (e)    DuPont failed to disclose to Class II Members the information it

27 knew of relating to the adverse effects of chemicals contained in Teflon

28 demonstrated in animal studies, the blood sample data it compiled regarding

Ervin, Cohen
& Jessup LLP

-24-

1  transplacental movement of chemicals contained in Teflon and the information it
2  knew of regarding the occurrence of birth defects in the children of its female
3  workers;

4          (f)     DuPont knew that exposure to PFOA has caused injuries to
5  humans and animals but concealed knowingly and failed to disclose these facts in its
6  mass marketing and product specific advertising of Teflon for cookware use;

7          (g)     DuPont knew that exposure to PFOA has caused injuries to
8  humans and animals but concealed its knowledge of the potential dangers associated
9  with the use of Teflon from the public and from the EPA in order to deceive
10 customers into using and purchasing products made with or containing Teflon;

11         (h)     DuPont has stated repeatedly and within the past two years that
12 both Teflon and PFOA are "safe" products for consumer use without the necessary
13 substantiating medical and scientific evidence;

14         (i)     DuPont has recently expressed an intention to replace PFOA in
15 the production of Teflon by late 2006.  This fact implies that DuPont is aware of the
16 potential risks that may be associated with the use of cooking products that have
17 been produced with Teflon and with PFOA.

18         80.    As a direct and proximate result of the foregoing, the Class
19 Representative Plaintiffs and other Class Members have been damaged.

20         81.    DuPont, through its acts of unfair competition, has acquired money
21 from the Class Representative Plaintiffs and the Class Members in the amounts that
22 the Class Representative Plaintiffs and the Class Members have paid directly or
23 indirectly, to DuPont or its agents for cooking products made with or containing
24 Teflon.  Pursuant to California Business and Professions Code § 17203, the Class
25 Representative Plaintiffs are entitled to injunctive relief and such other appropriate
26 orders as may be necessary to curb and restrain the unfair, unlawful and fraudulent
27 practices engaged in by DuPont.  So as to not be unjustly enriched by their own
28 wrongful actions and conduct, DuPont should be required to disgorge and restore to

Ervin, Cohen
& Jessup LLP

1  the Class Representative Plaintiffs, and the affected members of the general public,

2  all money and property obtained as a result of the unfair, unlawful and fraudulent

3  trade practices engaged in by DuPont.

4      82.    DuPont further violated the California Unfair Competition Law through

5  its unlawful violations of the California Consumers Legal Remedies Act, Cal. Civ.

6  Code §§ 1750, et seq., as set forth below in connection with the Class

7  Representative Plaintiffs' Second Cause of Action.

8      83.    DuPont further violated the California Unfair Competition Law through

9  its unlawful violations of the California False Advertising Law, Cal. Bus. & Prof.

10  Code §§ 17500, et seq., as set forth below in connection with the Class

11  Representative Plaintiffs' Third Cause of Action.

12      84.    DuPont further violated the California Unfair Competition Law,

13  through its unlawful violations of the Toxic Substances Control Act, 15 U.S.C. §

14  2615 ("TSCA").   TSCA § 15(3)(b), 15 U.S.C. § 2614(3)(b), provides that it is

15  unlawful for any person "to fail or refuse to submit reports, notices or other

16  information" required by the TSCA.   As set forth in paragraphs 35-45 above,

17  DuPont's failure or refusal to immediately submit certain blood sampling and data

18  monitoring information related to PFOA as required under TSCA 8(e), 15 U.S.C. §

19  2607,  is an unlawful act under the TSCA § 15(3)(b).

20              **SECOND CAUSE OF ACTION**

21      **(Violation Of The California Consumers Legal Remedies Act**

22          **California Civil Code §§ 1750 et seq.)**

23      85.    The Class Representative Plaintiffs reallege and reincorporate the

24  allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

25      86.    The Class Representative Plaintiffs bring this cause of action seeking

26  injunctive relief and damages pursuant to the California Consumers Legal Remedies

27  Action, California Civil Code §§ 1750 et. seq. ("the Act").  The Act applies to the

28

Ervin, Cohen
& Jessup LLP

conduct of DuPont herein because it extends to transactions which are intended to result, or which do result, in the sale or lease of goods or services to consumers.

87.     This claim is brought on behalf of Class II.  The Class Representative Plaintiffs and the Class II Members are individuals who have purchased, obtained, or been exposed to the use of Teflon-coated cookware products for or in connection with personal, family and household purposes within the State of California and, thus, are members of the public who are intended to be protected by this statute.

88.     The practices of DuPont violated, and continue to violate, the Act in at least the following respects:

(a)     In violation of Section 1770(a)(4) of the Act, DuPont has used deceptive representations in connection with goods offered for sale;

(b)     In violation of Section 1770(a)(5) of the Act, DuPont has represented that the goods had characteristics, ingredients, qualities or benefits which they did not have;

(c)     In violation of Section 1770(a)(7) of the Act, DuPont has represented that the goods are, or were, or a particular standard, quality or grade which they did not have; and

(d)     In violation of Section 1770(a)(14) of the Act, DuPont has represented that its goods confers or involves rights, remedies or obligations which it does not have or involve.

89.     The practices of DuPont have deceived and are likely to deceive members of the consuming public.

90.     As a direct and proximate result of the acts, omissions and conduct of DuPont, the Class Representative Plaintiffs and the Class Members have incurred economic damage in an amount not yet ascertained.  This First Amended Complaint will be amended to assert the amounts upon information received from the books and records of DuPont.

Ervin, Cohen
& Jessup LLP

91.    Pursuant to California Civil Code § 1780(a), the Class Representative Plaintiffs and the Class Members seek restitution of all amounts they have paid for DuPont products containing or made with Teflon and actual damages in an amount to be ascertained at trial.

92.    The conduct of DuPont was implemented and carried out with a willful and intentional and done with fraud, oppression and malice against the Class Representative Plaintiffs and the Class Members with a conscious disregard of the Class Representative Plaintiffs' and Class Members' rights and statutory mandates. As such, the Class Representative Plaintiffs and the Class Members seek punitive damages against DuPont in a sum appropriate to punish the defendants and to deter future similar misconduct.

93.    The Class Representative Plaintiffs and the Class Members further request this Court to award them their costs and reasonable attorney's fees, pursuant to California Civil Code § 1780(d).  The Class Representative Plaintiffs and the Class Members further request this Court to enjoin DuPont from continuing to employ the unlawful methods, acts, and practices alleged above, pursuant to California Civil Code § 1780(a)(2).

94.    On or about July 27, 2005, the Class Representative Plaintiffs notified DuPont in writing, pursuant to, and in compliance with, California Civil Code § 1782.  See Complaint, ¶80.  Specifically, Paragraph 80 of the Complaint stated:

> The Class Representative Plaintiffs, on behalf of themselves and all Class Members, hereby demand that within 30 days from service of this Complaint, DuPont correct, repair, replace or otherwise rectify the deceptive practices complained of herein for the entire Class pursuant to California Civil Code § 1770.  Failure to do so will result in the Class Representative Plaintiffs amending this Complaint to seek damages for such deceptive practices pursuant to California Civil Code § 1782.

95.     The Class Representative Plaintiffs have filed with this Court and served on DuPont their Venue Declaration pursuant to California Civil Code § 1780(c).

### THIRD CAUSE OF ACTION

**(Violation of the California False Advertising Law,**

**California Business & Professions Code §§ 17500, et seq.)**

96.     The Class Representative Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

97.     California Business & Professions Code § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or induce the public to enter into any obligation relating thereto, through the use of untrue or misleading advertising.

98.     This claim is brought on behalf of Class II.  The Class Representative Plaintiffs and the Class II Members are individuals who have purchased, obtained, or been exposed to the use of Teflon-coated cookware products for or in connection with personal, family and household purposes within the State of California and, thus, are members of the public who are intended to be protected by this statute.

99.     At all times mentioned herein, DuPont committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code § 17500 by engaging in, among other things, the following acts and practices with intent to induce members of the public to purchase and use Teflon-coated cooking products:

(a)     DuPont knew or should have known that Teflon emissions from heating were or are potentially harmful to consumers, can not be said to pose no risk to human health given the medical and scientific evidence within DuPont's knowledge, and are not without risks to human health for all uses or conditions associated with personal, family, and household use;

1    (b)   DuPont knowingly made misleading representations to Class II
2    that products made with or containing Teflon were safe and without risks for use by
3    consumers and their families;

4    (c)   DuPont knowingly advertised that products made with or
5    containing Teflon were safe, fit, effective for their intended purposes and without
6    risks to consumers and their families without stating all material conditions,
7    limitations, exclusions, and qualifications applicable thereto clearly, conspicuously,
8    and in close proximity to those representations;

9    (d)   DuPont knowingly made false representations to Class II that
10   products made with or containing Teflon were safe and not potentially harmful to
11   the Class despite what it knew of and concealed about the adverse effects of
12   chemicals contained in Teflon demonstrated in animal studies, the blood sample
13   data it compiled regarding transplacental movement of chemicals contained in
14   Teflon, and the information it knew of regarding the occurrence of birth defects in
15   the children of its female workers;

16   (e)   DuPont knew that exposure to PFOA has caused injuries to
17   humans and animals but concealed knowingly and failed to disclose these facts in its
18   mass marketing and product specific advertising of Teflon for cookware use;

19   (f)   DuPont has stated repeatedly and within the past two years that
20   both Teflon and PFOA are "safe" products for consumer use without the necessary
21   substantiating medical and scientific evidence;

22   (g)   Purposefully downplaying and understating the potential health
23   hazard and risks associated with Teflon-coated cooking products; and

24   (h)   Continue to promote and advertise Teflon-coated cooking
25   products knowing that there are potentially severe health risks associated with the
26   use of said products.

27   100.   The foregoing practices constitute false and misleading statements
28   within the meaning of California Business and Professions Code § 17500 et seq.

Ervin, Cohen
& Jessup LLP

-30-

1    101.   The acts of untrue and misleading statements by DuPont described

2    hereinabove present a continuing threat to members of the public in that the acts

3    alleged herein are continuous and ongoing, and the public will continue to suffer the

4    harm and/or be expose to the potential harm alleged herein.

5    102.   As a result of the above-described conduct, DuPont has been, and will

6    continue to be, unjustly enriched.   Specifically, DuPont has been unjustly enriched

7    by millions of dollars of ill-gotten gains from the sale of Teflon-coated cooking

8    products in the State of California, sold in large part of as a result of the actions and

9    omissions described herein.

10   103.   Class Representative Plaintiffs see the imposition of a constructive trust

11   over, and restitution and disgorgement of, monies collected and profits realized by

12   DuPont to cease such false and misleading advertising in the future.

13   **<u>FOURTH CAUSE OF ACTION</u>**

14   **(Negligence)**

15   104.   The Class Representative Plaintiffs reallege and reincorporate the

16   allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

17   105.   DuPont designed, manufactured, assembled, distributed, marketed and

18   sold Teflon for use in cooking products knowing that such products would be used

19   without inspection for hazards.

20   106.   At all times material hereto, the Teflon used in cooking products was in

21   substantially the same condition as when it left the possession of DuPont with

22   respect to the hazards alleged below.

23   107.   The Teflon manufactured, assembled, distributed, marketed, processed

24   and sold by DuPont, at the time it left the possession of DuPont, was hazardous and

25   inherently dangerous for its intended use, and was unreasonably dangerous and

26   presented and constituted a reasonable risk of danger and injury because:

27         (w)   Teflon, when heated, can emit toxic substances, and

28         (x)   Teflon contains substances that are likely to be carcinogenic.

Ervin, Cohen
& Jessup LLP

1   108.   At all times material hereto, DuPont owed a duty to the Class

2   Representative Plaintiffs and the Class Members, to design, manufacture, assemble,

3   inspect and/or test the Teflon it manufactured, processed, and distributed in such a

4   manner and with the exercise of reasonable care to prevent cooking products made

5   with Teflon from releasing hazardous substances when heated.

6   109.   At all times material hereto, DuPont further had a duty to warn

7   purchasers or intended users of Teflon-coated cooking products, including the Class

8   Representative Plaintiffs and the Class Members, of the potential health hazards of

9   Teflon and PFOA which it knew or should have known of in the exercise of

10   ordinary care, which hazards rendered the subject cooking products unreasonably

11   dangerous to use.

12   110.   DuPont breached its duties by negligently and carelessly designing,

13   manufacturing, assembling, distributing, marketing and selling Teflon, knowing it

14   will be used in cooking products, in the following ways:

15        (y)    by failing to use due care in developing Teflon for consumer use;

16        (z)    by failing to notify purchasers and users of Teflon-coated

17   cooking products, including the Class Representative Plaintiffs and the Class

18   Members, of inherent dangers associated with the use of Teflon which DuPont knew

19   or should have known of;

20        (aa)   by failing to adequately test whether Teflon is safe for consumer

21   use; and

22        (bb)   by failing to adequately warn the Class Representative Plaintiffs

23   and the Class Members of defects which it knew or reasonably should have known

24   of in the exercise of ordinary care.

25   111.   As a direct and proximate result of DuPont's breach of duty, the Class

26   Representative Plaintiffs and the Class Members have been damaged in an amount

27   to be determined at trial.

28

Ervin, Cohen
& Jessup LLP

**FIFTH CAUSE OF ACTION**

**(Fraudulent Inducement, Deceit, And Fraudulent Concealment)**

112.   The Class Representative Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

113.   As set forth herein, DuPont made material representations of fact to Class Representative Plaintiffs and the other Class Members, both actually and by omission.

114.   When misrepresentations and/or omissions occur in the context of extensive advertising or a common design of routine representations, class-wide exposure and reliance need not be plead specifically, but may be plead with sufficiency so as to put the defendant on notice of the allegations and a justifiably reliable representation may be inferred or presumed from the circumstantial evidence of widespread dissemination.  *See*, *inter alia*, *Committee on Children's Television, Inc. v. General Foods Corporation, et al.*, 35 Cal.3d 197, 673 P.2d 660, 197 Cal.Rptr. 783 (1983).

115.   For the past fifty years, DuPont directly benefited from and knowingly participated in the mass marketing and product-specific advertising for sale and distribution in the State of California of Teflon and Teflon-coated cooking products.

116.   Through this mass marketing and product-specific advertising, DuPont represented that Teflon was safe, fit, effective for its intended purpose, healthful, or more healthful than use of non-Teflon-coated cooking products.  This marketing and advertising campaign released misinformation to, *inter alia*, the members of Class I.

117.   The intent of DuPont's mass marketing, representations, assurances and product-specific advertising was to induce the purchase of Teflon-coated cooking products in the State of California for cooking use by emphasizing qualities and characteristics thereof material to the decisions of the Class Representative Plaintiffs and Class I members as to the purchase, use or retention of Teflon-coated cooking products for use over brands or types of cookware without a Teflon-coating.

Ervin, Cohen
& Jessup LLP

118.   Representations of the safety and healthfulness for cooking use, whether in absolute or comparative terms, of Teflon and Teflon-coated cooking products are material representations on which the Class Representative Plaintiffs and Class I members justifiably relied in deciding to purchase or retain Teflon-coated cooking products for use over brands or types of cookware without a Teflon coating.

119.   DuPont's mass marketing and product-specific advertising, including the assurances described above, made to induce the purchase and use of Teflon-coated cooking products in California, were such to cause the Class I Members, the Class Representative Plaintiffs, and any reasonable person to justifiably believe the ordinary use of Teflon-coated cooking products entailed no potential human health risk.

120.   At all relevant times, DuPont knew or should have known that the ordinary use of Teflon-coated cooking products can cause the release of substances that cannot be said, to a reasonable degree of medical or scientific certainty, to pose no potential human health risk.

121.   At all relevant times, DuPont knew or should have known that animal or human test data in its possession indicated potential adverse health effects from exposure to one or more of the substances that can be released during ordinary use of Teflon-coated cooking products.

122.   At all relevant times, DuPont had in its possession blood sample test results of its workers indicating transplacental movement of one or more of the chemicals that can be released during the ordinary and foreseeable use of Teflon-coated cooking products.

123.   At all relevant times, DuPont had in its possession data regarding deformities suffered by the children of female DuPont employees exposed to one or more of the chemicals that can be released during the ordinary and foreseeable use of Teflon-coated cooking products.

124.  At all relevant times, DuPont had in its possession information demonstrating or tending to demonstrate that one or more of the chemicals that can be released during the ordinary and foreseeable use of Teflon-coated cooking products presented potential risks of injury to human health.

125.  At all relevant times, DuPont had been notified by the EPA that evidence of transplacental movement of one or more of the chemicals that can be released during ordinary use of Teflon-coated cooking products in laboratory rats was "substantial risk data" of a potential human health risk.

126.  At all relevant times, DuPont knew or should have known that fumes from heated Teflon-coated cooking products can sicken people.

127.  DuPont's knowing failure to disclose and knowing decision and/or to conceal the above health-related information induced the Class Representative Plaintiffs and other Class I members to purchase, retain and continue use of Teflon-coated cooking products, and DuPont knew that full, timely, and complete disclosure would negatively impact sales of Teflon cookware and the profits from its sale of Teflon for such purposes.

128.  DuPont knew or should have known that its failure to disclose and/or concealing the above health-related information to the Class Representative Plaintiffs and the other Class I members made DuPont's mass marketing and product-specific representations of the safety and healthfulness of Teflon and Teflon-coated cooking products for ordinary and foreseeable use whether absolute or comparative in nature untrue or misleading.

129.  DuPont therefore had a duty to speak, which it breached negligently, recklessly, knowingly, intentionally, and/or with malice by concealing and/or not disclosing all material facts known or in its possession.

130.  At the time the aforementioned material express and implied representations to the Class Representative Plaintiffs and Class I members were made, the Class Representative Plaintiffs and Class I members were ignorant of

Ervin, Cohen
& Jessup LLP

1   their material falsity and believed them to be true.  Had they known that DuPont had

2   made, or caused to be made, false and misleading representations, the Class

3   Representative Plaintiffs and Class I members would not have purchased, retained

4   or used Teflon-coated cooking products.

5   131.   As set forth herein, when DuPont made the representations set forth

6   hereinabove, it knew them to be false, or made them with reckless disregard of their

7   truth or falsity, and made them with the intention that the Class Representative

8   Plaintiffs and Class I members would rely on the statements and omissions so that

9   Class Representative Plaintiffs and Class I members would purchase and use

10  Teflon-coated cooking products.

11  132.   As the proximate result of DuPont's fraudulent inducement, deceit, and

12  fraudulent concealment, the Class Representative Plaintiffs and the Class I members

13  suffered injury, including but not limited to the purchase, retention for use, and

14  continued use of Teflon coated cooking products.

15  133.   The Class Representative Plaintiffs and Class I members are informed

16  and believe, and thereon allege, that DuPont committed the acts alleged herein with

17  knowledge of their wrongfulness.  In committing such acts, DuPont is guilty of

18  oppression, fraud and malice, entitling the Class Representative Plaintiffs and Class

19  I members to an award of exemplary and punitive damages in an amount

20  appropriate to punish DuPont and to deter such conduct in the future.

21  **SIXTH CAUSE OF ACTION**

22  **(Negligent Misrepresentation)**

23  134.   The Class Representative Plaintiffs reallege and reincorporate the

24  allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

25  135.   As set forth herein, DuPont negligently made material representations

26  of fact to the Class Representative Plaintiffs, both actually and by omission.

27  136.   When misrepresentations and/or omissions occur in the context of

28  extensive advertising or a common design of routine representations, class-wide

Ervin, Cohen
& Jessup LLP

-36-

1   exposure and reliance need not be plead specifically, but may be plead with

2   sufficiency so as to put the defendant on notice of the allegations and a justifiably

3   reliable representation may be inferred or presumed from the circumstantial

4   evidence of widespread dissemination.  *See*, *inter alia*, *Committee on Children's*

5   *Television, Inc. v. General Foods Corporation, et al.*, 35 Cal.3d 197, 673 P.2d 660,

6   197 Cal.Rptr. 783 (1983).

7        137.   For the past fifty years, DuPont directly benefited from and knowingly

8   participated in the mass marketing and product-specific advertising for sale and

9   distribution in the State of California of Teflon and Teflon-coated cooking products.

10        138.   Through this mass marketing and product-specific advertising, DuPont

11   represented that Teflon was safe, fit, effective for its intended purpose, healthful, or

12   more healthful than use of non-Teflon-coated cooking products.  This marketing and

13   advertising campaign released misinformation to, *inter alia*, the members of Class I.

14        139.   The intent of DuPont's mass marketing, representations, assurances and

15   product-specific advertising was to induce the purchase of Teflon-coated cooking

16   products in the State of California for cooking use by emphasizing qualities and

17   characteristics thereof material to the decisions of the Class Representative Plaintiffs

18   and Class I members as to the purchase, use or retention of Teflon-coated cooking

19   products for use over brands or types of cookware without a Teflon-coating.

20        140.   Representations of the safety and healthfulness for cooking use,

21   whether in absolute or comparative terms, of Teflon and Teflon-coated cooking

22   products are material representations on which the Class Representative Plaintiffs

23   and Class I members justifiably relied in deciding to purchase or retain Teflon-

24   coated cooking products for use over brands or types of cookware without a Teflon

25   coating.

26        141.   DuPont's mass marketing and product-specific advertising, including

27   the assurances described above, made to induce the purchase and use of Teflon-

28   coated cooking products in California, were such to cause the Class I Members, the

Ervin, Cohen
& Jessup LLP

1  Class Representative Plaintiffs, and any reasonable person to justifiably believe the

2  ordinary use of Teflon-coated cooking products entailed no potential human health

3  risk.

4      142.   The Class Representative Plaintiffs are informed and believe, and

5  thereon allege, that at the time DuPont made the aforesaid material express and

6  implied representations to the Class Representative Plaintiffs and Class I members,

7  DuPont intended that they rely thereon without any reasonable basis for believing

8  these express and implied material representations to be true, and rendering them to

9  be false.  By doing so, DuPont negligently led the Class Representative Plaintiffs

10  and Class I members.

11      143.   As a direct and proximate result of the negligent express and implied

12  misrepresentations of DuPont as set forth herein, and the Class Representative

13  Plaintiffs and Class I members' justifiable reliance thereon, the Class Representative

14  Plaintiffs and Class I members have been damaged in an amount to be determined

15  according to proof at trial.

16              **SEVENTH CAUSE OF ACTION**

17              **(Restitution--Unjust Enrichment)**

18      144.   The Class Representative Plaintiffs reallege and reincorporate the

19  allegations contained in paragraphs 1 though 75 and 112 through 142.  This cause of

20  action is brought on behalf of a sub-class of Class I and Class II Members who

21  purchased within the State of California one or more cooking products made with or

22  containing Teflon on or after July 27, 2001 and still owned the cooking product(s)

23  on July 28, 2005 (the "Restitution Sub-Class Members").

24      145.   It is unjust and inequitable for DuPont to retain the benefits it has

25  received as the result of the conduct hereinabove alleged, yet DuPont has failed to

26  make restitution to the Class Representative Plaintiffs or the Restitution Sub-Class

27  Members.  Such failure constitutes unjust enrichment.

28

Ervin, Cohen
& Jessup LLP

146. As the direct and proximate result of the foregoing, the Class Representative Plaintiffs Restitution Sub-Class Members are entitled to receive, and DuPont should be required to make, restitution of all sums received by DuPont from the Class Representative Plaintiffs and Restitution Sub-Class Members from the sale of Teflon-coated products in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Class Representative Plaintiffs, on behalf of themselves, the Class Members, and all others similarly situated, pray for the following relief:

1. For an order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives, and that the Class Representative Plaintiffs' counsel be appointed Class Counsel;

2. For injunctive relief requiring DuPont (i) to create a fund for independent scientific researchers to further investigate the potential for adverse health effects to consumers who have used cooking products containing Teflon; (iii) to provide a warning label on cooking products containing Teflon regarding the potential adverse and harmful effects of using Teflon-coated cooking products;

3. For compensatory damages in an amount to be determined at trial;

4. For punitive damages in an amount to be determined at trial;

5. For restitution in an amount to be determined at trial;

6. For pre-judgment and post-judgment interest;

7. For court costs, and attorneys' fees;

8. For the imposition of civil penalties as allowed by statute;

9. For an order appointing a receiver, pursuant to California Business and Professions Code § 17203, to administer the disgorgement and restitution of the profits and ill-gotten gains acquired by and through DuPont's unfair, unlawful dishonest and deceptive acts;

Ervin, Cohen
& Jessup LLP

-39-

10.    For the establishment of a court-operated ongoing medical monitoring program to Class I members;

11.    For equitable and injunctive relief for providing notice to the Class Representative Plaintiffs and the class;

12.    An injunction preventing DuPont from continuing the unlawful conduct alleged herein pursuant to California Consumers Legal Remedies Action, California Civil Code §§ 1750 et. seq.;

13.    For interest, punitive and exemplary damages in an amount sufficient to punish and make example of DuPont pursuant to California Consumers Legal Remedies Action, California Civil Code §§ 1750 et. seq. and California Civil Code § 3294, and California Code of Civil Procedure § 1780;

14.    For the retention of jurisdiction thereafter for Class I members who elect to seek actual and punitive damages;

15.    Such other and further relief at law or equity as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Class Representative Plaintiffs hereby request trial by jury of all issues so triable as a matter of law.

ERVIN COHEN & JESSUP, LLP
Counsel for Plaintiffs
9401 Wilshire Blvd. 9th Floor
Beverly Hills, CA 90212-2974
Tele: (310) 273-6333
Fax:  (310) 859-2325

KLUGER, PERETZ, KAPLAN & BERLIN, P.L.
*Counsel for Plaintiffs*
Miami Center, 17th Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone:    (305) 379-9000
Facsimile:    (305) 379-3428

Ervin, Cohen
& Jessup LLP

1

2

3       Kimberley K. Baer     PK0014675
        Steven P. Wandro      PK0008439
4       WANDRO, BAER & APPEL, P.C.
        *Counsel for Plaintiffs*
5       2501 Grand Avenue, Suite B
        Des Moines, Iowa 50312
6       Telephone:     515/281-1475
        Facsimile:     515/281-1474
7

8       By:   s/ Kimberley K. Baer
9              Kimberley K. Baer, Esq.

10

11                    **CERTIFICATE OF SERVICE**

12          **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

13   via Electronic Mail and a true and correct copy of the Certificate of Service (only) furnished via

14   U.S. Mail to:  **Adam L. Hoeflich, Esq.**, (adam.hoeflich@bartlit-beck.com) Bartlit Beck Herman

15   Palenchar & Scott LLP, 54 W. Hubbard Street, Chicago, IL 60610l; **Robert Fanter, Esq.**,

16   (fanter@whitfieldlaw.com) Whitfield & Eddy 317 Sixth Avenue, Suite 1200, Des Moines, Iowa

17   50309 and **John Sherk, Esq.**, (jsherk@shb.com) Shook Hardy & Bacon LLP, 2555 Grand Blvd.,

18   Kansas City, MO 64108  this 8th day  of May 2006.

19

20

21       By:              s/ Kimberley K. Baer
22              Kimberley K. Baer, Esq.

23

24

25

26

27

28

Ervin, Cohen
& Jessup LLP